## POLLARD et al. v. SALTONSTALL et al.

### (Circuit Court, D. Massachusetts. June 26, 1893.)

### No. 2,600.

1. CHATTEL MORTGAGES—BILL OF SALE AS SECURITY.
   A bill of sale of personal property, given as security for a loan, is, in effect, a mortgage, and is subject to the statutes relating to chattel mortgages.

2. SAME—RECORDING—GOODS AT SEA—POSSESSION BY MORTGAGEE—DILIGENCE.
   The Massachusetts statutes relating to chattel mortgages except from the necessity of recording all mortgages of goods at sea or abroad if the mortgagee takes possession of the goods as soon as may be after their arrival in the state. *Held*, that where a shipment of hides was mortgaged while at sea or abroad, and demand for possession was made nine days after the ship's arrival, and while the goods were still in possession of the customs officials, this was sufficient diligence as against a third person holding a subsequent bill of sale.

3. SAME—CONSTRUCTION.
   A chattel mortgage given at Boston on "about 6,000 hides," then laden or to be laden on a certain vessel on the coast of Africa, will cover the whole lot of hides, though it turns out that there are somewhat more than 7,000.

In Equity. Bill by Reuben T. Pollard and others against Leverett Saltonstall and another to foreclose a chattel mortgage, and for an injunction. Decree for complainants.

Charles K. Cobb, for complainants.

Lewis S. Dabney, for defendant Reardon.

COLT, Circuit Judge. On July 21, 1888, Nathaniel B. Mansfield, of Manchester, Mass., now deceased, being indebted to the plaintiffs upon certain promissory notes, wrote the following letter:

"Boston, July 21, 1888.

"Mess. Pollard, Pettus & Co.—Dear Sir: I would like to arrange with you to extend that $10,500 note ½ 30 days ½ 60 days. The vessel that took the tobacco to Sierra Leone had her charter canceled at that port for want of sufficient return cargo, and the hides will come forward by the Rebecca Goddard. I will give you a bill of sale of the 6,000 hides as security. You will accommodate me very much by so doing.

"Yours, truly,                                   N. B. Mansfield."

The extension was granted, and the following bill of sale was subsequently delivered to the plaintiffs:

"Be it known that I, Nathaniel B. Mansfield, of Manchester, in the county of Essex, and commonwealth of Massachusetts, for and in consideration of one dollar and other good and valuable considerations, the receipt whereof is acknowledged, have bargained and sold, and by these presents do bargain and sell, unto Pollard, Pettus & Company, of New York, copartners, having their usual place of business at numbers 54 and 56 Broad street, in the city of New York, about six thousand dry Sierra Leone hides, now laden or to be laden on board the bark Rebecca Goddard on her present voyage; the said hides being of the present market value of one dollar and sixty cents each. In testimony whereof I have hereunto set my hand and seal this third day of August, 1888.                         N. B. Mansfield. [Seal.]

"In presence of Sidney D. Shattuck."

Several weeks after this the said Mansfield, in consideration of the indorsement by the defendant Edmund Reardon of a note of $8,000, executed and delivered the following paper:

"Boston, Oct. 16, 1888.

"John Reardon & Sons, to N. B. Mansfield, Dr.

"For 7,000 dry hides, now laden either on the bark Rebecca Goddard or bark Elmiranda, on the coast of Africa, and to be forwarded by either of the above vessels to Boston.

"Bill of lading to be delivered on receipt by me.

"$10,000.                             Received payment, N. B. Mansfield."

This note was discounted, and the proceeds went to Mansfield, When the note became due it was renewed by a second note for the same amount, dated February 19, 1889, payable three months after date. The second note was protested at maturity, and paid by Reardon the next day. In November, 1888, the bill of lading mentioned in the paper of October 16th was delivered to Reardon, after being indorsed as follows: "Deliver to John Reardon & Sons. N. B. Mansfield." The Elmiranda arrived in Boston, April 8, 1889, laden with 7,040 hides. A permit was issued April 16th to John Reardon & Sons to land and deliver the hides. After the issue of the permit the hides passed into the charge of the government inspector or appraiser. It appears that goods are not delivered

under a permit until after the inspector has made his report. On April 17th, the plaintiffs, through their counsel, made a demand for the hides upon John M. Fiske, deputy collector. Two days after, and while the hides were still in the possession of the government, the following agreement was entered into between the parties:

"Boston, 19th April, 1889.

"It is agreed that the dry hides now on board bark Elmiranda may be delivered to John Reardon & Sons, and the said John Reardon & Sons agree to receive the same, and to hold them until the further order of the court in the suit brought by Reuben T. Pollard and others against Leverett Saltonstall and another in the circuit court of the United States for the district of Massachusetts, and said Reardon & Sons agree that said delivery to them shall be without prejudice to any right of the plaintiffs in said suit: provided, however, that if the injunction asked for by the plaintiffs in said suit shall be refused by the court, the obligation of said Reardon & Sons to hold said hides under this agreement shall thereupon be ended."

The main question presented in this case is, which party has the better title to the hides? It is clear upon the evidence that the transaction respecting the hides between Mansfield and the plaintiffs constituted a mortgage, and not a sale. In his letter to the plaintiffs of July 21st, Mansfield says, "I will give you a bill of sale of the 6,000 hides as security," and in a letter dated October 2d, he says, "In any event, you are fully secured, as the hides of which you hold the bill of sale are worth," etc. A test of a legal mortgage of personal property is where the instrument is one of sale, with a condition, expressed or implied, that the sale is to be defeated by the debtor's performance of the agreement; and the general rule is, where an instrument of transfer is given, and possession is not taken by the creditor, and the transaction resolves itself into security for a debt, it is construed to be a mortgage. Jones, Chat. Mortg. § 8; Wilmerding v. Mitchell, 42 N. J. Law, 476; Conard v. Insurance Co., 1 Pet. 386, 446; Smith v. Beattie, 31 N. Y. 542; Barron v. Paxton, 5 Johns. 258; Langdon v. Buel, 9 Wend. 80. In Esson v. Tarbell, 9 Cush. 407, 413, Chief Justice Shaw says:

"It is true that at common law, to make a valid sale as against third parties, possession must accompany and follow the conveyance; but this only applies to absolute conveyances, when the retaining of possession by the vendor, being contrary to the avowed object of the sale, is regarded as a badge of fraud. But this rule is not applicable to mortgages, where the possession of the mortgagor is perfectly consistent with all the apparent purposes of a conveyance for the security of a debt."

The laws of Massachusetts provide that all chattel mortgages must be recorded, and, unless so recorded, or possession given and retained by the mortgagee, they shall not be valid against third parties, but the statute contains this exception:

"Sec. 3. No record pursuant to section one shall be necessary to the validity of a mortgage or other instrument relating to a ship or vessel, nor to the validity of a mortgage of goods at sea or abroad, if the mortgagee takes possession of such goods as soon as may be after their arrival in this commonwealth." Pub. St. Mass. c. 192, §§ 1–3; Acts 1883, c. 73.

The contract between these parties being governed by the law of Massachusetts, and relating to a mortgage of goods at sea or

abroad, it became unnecessary to record the instrument. The statute also provides that the mortgagee must take possession of the goods as soon as may be after their arrival in the commonwealth. I think there was no lack of diligence in this respect on the part of the plaintiffs. The vessel arrived April 8th, and demand was made and suit brought by the plaintiffs April 17th, and before the goods had passed out of the hands of the government. As between the plaintiffs and defendants, I am of opinion that the former have a prior claim to the hides in controversy. The objections interposed by the defendants are insufficient, and do not meet the facts of the case. If this transaction had been a sale, and not a mortgage given as security for a debt, there would be some force in the position taken by the defendants that the plaintiffs must show an actual delivery of the goods to themselves, or something equivalent thereto, in order to defeat the defendants' title. But the rule of law respecting sales does not apply to this case.

Again, it is contended that there is no sufficient proof that on August 3, 1888, Mansfield was the owner of 6,000 dry Sierra Leone hides; but I think the letter of instruction given by Mansfield to Capt. Nelson, and other evidence, sufficiently establishes title to the hides in Mansfield at that time, in the absence of any evidence to the contrary.

It is further urged that the conveyance under which the plaintiffs claim is of "about 6,000 hides," and that this language should not be construed to cover a cargo of 7,040 hides, which is a materially greater number; and it is also contended that, where a part of a mass is sold, a separation is necessary, in order to pass title. The answer to these propositions is that the instrument did not undertake to convey a specific number of hides. This is manifest from the use of the word "about;" and it is also clear to my mind that Mansfield intended to convey to the plaintiffs all the hides belonging to him which were laden or were about to be laden on the Rebecca Goddard, and which were subsequently transferred to the Elmiranda.

These hides were conveyed to the plaintiffs as security for a note of $10,500, given by Mansfield, which was to be renewed in the form of two notes, one payable in 30 and the other in 60 days. One of these renewed notes was paid, and the other, due October 3, 1888, was not paid, but was again renewed by a note for $5,334.30, due November 5, 1888. Upon this note $2,000 was paid November 21, 1888, leaving a balance of $3,334.30 due on the original $10,500 note. The plaintiffs are only entitled to recover this amount, with interest, under the contract. There is nothing in the evidence which shows that the hides were conveyed as security for any other debt than the note for $10,500.

A decree may be entered for the plaintiffs in conformity with this opinion.